### D. SULLIVAN v. ADOLFO SOLIS ET AL.

Decided December 2, 1908.

1.—Brief—Rule 31.

An assignment of error based upon a bill of exception which is not so referred to in the statement under the assignment as to enable the Appellate Court readily to find and identify the same, does not demand consideration on appeal.

2.—Spanish Grant to Town of Camargo—Cases Followed.

The document styled "Translation of the Act of the Visit of the Royal Commissioners to the town of Santa Ana of Camargo in 1767," made by J. L. Haynes in pursuance of the authority granted by the State through an Act passed in April, 1871, entitled "An Act to provide for the obtaining and transcribing of the several acts or charters founding the towns of Reynosa, Camargo, Mier and Guerrero in the Republic of Mexico, and of Laredo in Texas," and filed by said Haynes in the General Land Office of the State of Texas, was admissible in evidence for the purpose of showing title in one claiming under said grant, and was not subject to the objections that the same shows only an inchoate claim, and that the description of the land granted thereby when considered in connection with other evidence, was too indefinite and uncertain. The case of Texas-Mexican Railway Company v.· Jarvis, 69 Texas, 527, and Downing v. Diaz, 80 Texas, 436, followed.

3.—Patent by State—"Titled Land"—Constitutional Law.

Under the provisions of article 14, section 2, of the Constitution of Texas of 1876, land granted by the Spanish Government to the town of Camargo, evidence of which was then in the General Land Office of this State, was such "titled land" as could not be located, surveyed or patented by virtue of land certificates issued by the State.

4.—Evidence—Surveyor's Records.

Under the provisions of article 2307, Rev. Stats., copies from the records of a district surveyor of a resurvey of an original grant, are competent evidence.

**5.—Evidence—Resurvey of Grant—Recital by Surveyor.**

The following recital made by an official surveyor in his record in connection with the field notes of a resurvey made by him in 1880, of a Spanish grant made in 1767, to wit: "Field notes of a resurvey of one and a fraction leagues or sitios of land situated in Starr County, about 15 miles north of Rio Grande City in said county, made for the heirs and legal assigns of Juan Jose Solis, to whom the said land was originally granted by the Crown of Spain by a donation bearing date the year 1767, the said tract being known and called Porcion No 107, of the former jurisdiction of Camargo," held, admissible in evidence, as against a junior locator upon the land, for the purpose of showing that in 1880 the land was recognized as being the property of the Solis heirs.

**6.—Trial without Jury—Admission of Evidence—Harmless Error.**

The admission of improper evidence when the same facts are proved by proper evidence and the trial is before the court, will not be cause for reversal.

**7.—Evidence—Boundaries—Adjacent Surveys.**

When the field notes of adjacent tracts tend to identify the boundaries of the tract in controversy, evidence of such adjacent surveys is admissible.

**8.—Trespass to Try Title—Evidence—Map of County.**

In an action of trespass to try title wherein the plaintiff claimed the land in controversy under a junior grant, the official map of the county is competent evidence upon the question of boundaries, and the fact that the map was compiled after the suit was instituted, and that the data upon which it was made were not before the court, would not affect the question.

**9.—Heirship—Evidence.**

Hearsay evidence is admissible to prove relationship and pedigree.

Appeal from the District Court of Starr County. Tried below before Hon. W. B. Hopkins.

*G. R. Scott* and *W. L. Dawson,* for appellant.

No brief for appellees.

FLY, ASSOCIATE JUSTICE.—This is an action of trespass to try title instituted by Adolfo Solis, J. R. Monroe and F. W. Seabury, herein styled appellees, against D. Sullivan, appellant, the land involved being 1280 acres out of *porcion* No. 107, originally granted to Juan Jose Solis by the Spanish Government in 1767. A trial before the court resulted in a judgment in favor of appellees.

The trial judge filed the following conclusions of fact, which are sustained by the statement of facts, and are adopted by this court as its conclusions of facts:

"The tract of land in Starr County, Texas, known as and being *porcion* No. 107, of the ancient jurisdiction of Camargo, Mexico, was originally granted by the Spanish Government in the year 1767 to Juan Jose Solis, in and by valid grant in writing known as 'The Act of General Visit of the Royal Commissioners to the Town of Santa Anna of Camargo in 1767,' embracing this and other lands, and that lawful possession of said tract of land was duly given to said Juan Jose Solis in the year 1768 by the captain and chief justice of said town of Camargo, thereto duly authorized, and evi-

denced by the act of such possession attached to the said 'Act of General Visit.'

"Said 'Act of General Visit' and the act of such possession were duly archived under the Spanish Government in said year respectively, and that a copy of all of the same was filed in the General Land Office of Texas in the year 1871, by the virtue of an Act of the Legislature of Texas, approved April 24, 1871, entitled: 'An Act to provide for the obtaining and transcribing of the several Acts or charters founding the towns of Reynosa, Camargo, Mier and Guerrero in the Republic of Mexico, and of Laredo, in Texas, and making an appropriation for the purpose,' and that same has ever since constituted, and now constitutes, an archive of said General Land Office, under article 62 of the Revised Statutes of Texas.

"Plaintiff Adolfo Solis is a lineal descendant of said Juan Jose Solis, and that the other plaintiffs are lawful assignees of other lineal descendants of said Juan Jose Solis, and that the plaintiffs own undivided shares of interests in and to the whole of said *porcion* from and under the said Juan Jose Solis, and that their cotenants are not parties to this suit.

"The 1280 acres of land, more or less, sued for in this suit, are within the true and well defined boundaries of and form a part of the said *porcion* No. 107, as so granted, possessed and known.

"The said *porcion* No. 107, as such *porcion* No. 107, was surveyed for the heirs and legal assigns of said Juan Jose Solis in the year 1879 by the district surveyor of Starr County, and was resurveyed for them by the same officer in the year 1880; that the metes and bounds of said *porcion* No. 107, as described in each of said surveys, include the land in controversy herein, and that the field notes of said two surveys were duly certified, filed and recorded in the years 1879 and 1880, respectively, in the public surveyor's records of said Starr County, and have ever since remained on the said records.

"The said *porcion* No. 107 was, in accordance with said survey, duly platted in the official map of said Starr County on file in the General Land Office, and that said map was in use, and was the authentic and official map of and archive of the General Land Office from 1880 to 1900, and that said *porcion* No. 107 was in the year 1880 entered and thereafter carried on the official abstract of land titles of the General Land Office of Texas as and under the number of abstract No. 348 for Starr County, in the name of Juan Jose Solis as original grantee.

"Plaintiffs, and those whose estate they have, were in possession of said *porcion* No. 107 for a long time prior to the location of any certificates on said tract, by one —— Yzaguirre, who held same for the Solis heirs, until it was located by certificates described herein, and that for the eleven years last past they have had the actual, continuous and exclusive possession of said *porcion* No. 107, claiming and holding same under said grant and under said well defined boundaries.

"In the year 1882 one George W. Lowe, whose rights in the premises have passed by mesne conveyances to and are vested in the defendant, D. Sullivan, located Confederate Scrip No. 799, issued to

L. Jane Benton, on the land in controversy herein; that by virtue of said location same was surveyed in 1882 as survey No. 729 of Starr County, and that said land so located and surveyed was patented to said Lowe on November 26, 1886, by patent No. 427 of vol. 36.

"At the time of said location, survey and patenting of the land in controversy herein the said *porcion* No. 107, upon which said location was made and patent obtained, was land titled, and was equitably owned by plaintiffs under color of title from the sovereignty of the State, and that the evidence of the appropriation of said land was in the General Land Office and also on the county records of Starr County, and also evidenced by the occupation of the owners of said *porcion,* who were the plaintiffs in this suit and those whose rights plaintiffs now have.

"Said location, survey and patent were made and issued since the Constitution of 1876 went into effect.

"The defendant has never had actual possession of the land in this suit."

The first assignment should not be considered at all, as it is not followed by such a statement as is contemplated by the rules. It is based on a bill of exceptions, which is not referred to in the statement, and the labor is entailed upon the court of discovering it in the record. (Rule 31 for Courts of Civil Appeals.) We have considered it, however, and conclude that it is without merit. The "Translation of the Act of the Visit of the Royal Commissioners to the town of Santa Anna of Camargo in 1767" showed a division of certain lands among the citizens of the town, *porcion* 107 being allotted by the commissioners to Juan Jose Solis. The document in question purports to be a "record of proceedings practiced in the town of Camargo in the year 1767, are to be found the adjudications and possessions to the citizens of this town," made by "Don Juan Fernando de Palacios, vowed knight of the order of St. James, Commander of the Shield in the same, Field Marshal of the Royal Armies of his Majesty, Governor and Lieutenant of the Colony of the Mexican Gulf Sierra Gorda, their missions, garrisons and frontiers, and Don Joseph de Ossorio y Llamas, Advocate of the Royal Councils, commissioned to visit the same by his Lordship, the Marquis of Croiz, Viceroy Governor and Captain General of the Kingdom." They began their labors at Camargo, on August 2, 1767, and concluded them on August 31, 1767, partitioning the land and setting apart 111 *porcions* to different citizens by lot, among the number being *porcion* No. 107. The surveyors appointed by the commissioners reported that in compliance with their instructions they had gone to the boundary marked out for the town, which adjoined the boundary of Reynosa, and calculated the depth of the grant, which was five leagues; then they "stretched the cord from east to west along the margin of the Rio Grande del Norte, and with twenty-three cords and thirty varas for each end, and twenty-five thousand varas in depth," which constituted the first *porcion,* which was allotted to Gregorio Farias; to this tract the other *porciones* were tied, up to and including No. 69, excepting 43 and 44, on the Mexican side of

the river. The survey on the north or Texas side of the river was begun at a place called San Juan de Buena Vista, on the boundary of Mier, and the remaining forty-two *porciones* were laid off, among the number *porcion* No. 107, a part of which is in controversy.

The document shows that prior to the private surveys the town had been staked out and its boundaries defined, one of which is called for as the beginning point of the surveys of the *porciones*. The boundaries of the town could be identified. There is a call for the survey of Mier, and for certain creeks and rivers by which the boundaries of the town could be ascertained. Every step in the division of the land is fully set forth in the document in question, and the law for such purposes seems to have been followed.

A document very similar, made about the same time by the same commissioners, has been discussed by the Supreme Court and its admissibility sustained. (Texas Mex. Ry. v. Jarvis, 69 Texas, 527.) The translation in this case was made by J. L. Haynes, in pursuance of the authority granted by the State through an Act passed in April, 1871, entitled "An Act to provide for the obtaining and transcribing of the several Acts or charters founding the towns of Reynosa, Camargo, Mier and Guerrero, in the Republic of Mexico, and of Laredo in Texas, and making an appropriation for that purpose." Paschal's Dig., art. 5826. Haynes certified that the 366 pages contained a correct transcript and translation of the Act of the Visit, or charter founding the town of Camargo, in the Republic of Mexico, the said transcript having been copied under his supervision and duly translated by him in accordance with the Act of the Legislature. He also certified that the cord for the survey of land consisted of fifty Mexican varas. The document with the certificate was deposited in the archives of the State at Austin, in December, 1871.

A portion of the document in question shows that in June, 1768, Don Jose Antonio de la Garza Falcon, Captain and Chief Justice of the town of Santa Anna of Camargo, under commission of Palacio and Ossorrio, the commissioners who had assigned the lands in the name of the King of Spain, together with Joseph Gutierrez and Miguel de Barcena, of assistance, proceeded to give possession of the lands theretofore assigned. To do this they proceeded to the boundary between Camargo and Reynosa, which is called Cucharas, and proceeded to put Farias in possession of *porcion* No. 1, and ordered him to put perpetual cornerstones on both head lines, and so on with each *porcion* up to and including No. 111. The surveyors certified that the forty-two *porciones* on the Texas side had been surveyed and marked and adjudicated according to their instructions.

The court found, and it is not denied, that the land in controversy is a part of the grant to Camargo and a part of *porcion* 107, out of that grant. The land was in possession of the Solis family until Isaguirre left it in 1882, about the time that Lowe placed his location on it. The official map of Starr County plainly defined *porcion* 107, and that map was an archive in the General Land Office from 1880 to 1890. The proposition under the fourteenth assignment of error which complains of the finding as to the map has but one proposi-

tion, and that refers to the description of the land. The description seems to have been sufficient to obtain it a well defined position on the map. The certificate of the Land Commissioner shows that the map was in use from 1880 to 1890.

In February, 1850, an Act was passed providing for the appointment of two commissioners, whose duty was to receive and examine all titles and claims to land in the counties of Kinney, Webb, Starr, Cameron, Nueces, Presidio, El Paso, Worth and Santa Fe, which emanated from the government's exercising jurisdiction over the country prior to March 2, 1836, and report the same. The mode of examination was prescribed. (Pasch. Dig., art. 4440.) The report of the commissioners was made. On February 10, 1852, the Legislature confirmed the titles to a number of grants, among the number being the title to all of the *porciones* named in the charter of Camargo, except 101, 102 and 107. (Pasch. Dig., art. 4461.) That ,Act of confirmation was a confirmation of the charter of Camargo. It placed the stamp of the State's approval of its validity, and severed the Camargo grant from the public domain, and rendered it not subject to location and. appropriation. This was the inevitable scope and effect of the act of relinquishment of the State to 39 of the 42 *porciones,* which were situated on the Texas side of the Rio Grande, because the document that severed one of the *porciones* from the public domain, severed all of them. The title to *porcion* 107 was not confirmed to the heirs of Solis in 1852, but, as before stated, the titles to 39 *porciones,* several adjacent to 107, were confirmed, and this was to all intents and purposes a confirmation. Under the evidence of Adolfo Solis, Isaguirre must have been in possession of the land in 1850 and in 1852, when the titles to a large part of the Camargo grant was confirmed. In the case of Downing v. Diaz it appeared that the title to *porcion* 36 of the Guerrero grant, the one in controversy, had not been confirmed by the Act of 1852, but the title to *porcion* 25 and 37 had been confirmed, and the court held that the act of confirmation in connection with possession gave title to those claiming *porcion* 35 under the Guerrero grant. The court further said: "The findings of fact required the findings of law, and while it is not necessary to rely upon the certified copy of the 'general visit,' to show the title of the plaintiffs, we desire to note .the fact that by' the Act of February 10, 1852 (Pasch. Dig., art. 4461), no less than twenty *porciones* of. land within the jurisdiction of Guerrero were confirmed by numbers, as given in that instrument, to the persons to whom that showed these several *porciones* were granted in 1767; and had application been made for confirmation of *porcion* No. 36 it doubtless would have been made at the same time as was done in regard to those above and below and contiguous to it." That ruling. is peculiarly applicable to this case.

Possession of the land was mentioned merely as additional evidence of the grant, and it is nowhere intimated in the opinion from which the quotation is taken, that the title would not have been a good one independent of the possession. Possession brought the claimant within the class mentioned in article 14, section 2, Constitution of Texas, as when the appropriation "is evidenced by the

occupation of the owner, or of some person for him," but did not militate against his protection from location on his land because of its being "titled or equitably owned under color of title from the State, evidence of the appropriation of which is on the county records or in the General Land Office." In this case the evidence of appropriation of *porcion* 107 was among the records of the General Land Office, and occupancy of the land was not absolutely necessary to show that the land was titled or equitably owned. Occupancy was a circumstance tending to identify the land, but such identity was established without its aid.

In the resurvey of *porcion* 108, made by J. G. Eivet, district surveyor of Starr County, in 1880, the southeast corner of *porcion* 107 is called for, being placed on the north boundary line of *porcion* 76, and on the west line of 108 the northeast corner of *porcion* 107 is called for as being a fixed and defined point. Also in the resurvey of *porcion* 106, which lies adjacent to 107, there are calls for natural objects from which the position of 107 could be easily ascertained. In the patent to George W. Lowe, under whom appellant claims, the beginning point, in the description of the land in controversy, is "at a hewed mesquite post on W. line of *porcion* No. 108, Camargo," and a call is made for the northeast corner of *porcion* 106. The State was clearly recognizing the grant made to Camargo in 1767, and the calls for corners of the two *porciones* adjacent to 107 clearly shows its position. The present official map of Starr County recognizes *porciones* 106 and 108, which lie on either side of 107. Adolfo Solis, who was sixty-six years old, swore that Antonio Izaguirre was placed in possession by his father and uncles when the witness was quite young, and remained in possession until at or about the time the certificate was located on it in 1882. He must have been in possession for many years. We think the land was sufficiently identified.

There is no force in the contention that the title conferred by the charter of Camargo was merely an inchoate one. It evidences an absolute grant to the town and the different individuals named therein. The Act of 1871 made the charters of the cities named evidence, and, as said in Railway v. Jarvis, herein cited, it can not "be supposed that the Legislature was unaware of the fact that the same instrument which shows the extent of the thing granted, usually evidences the fact that the thing was granted." See also Downing v. Diaz.

It is provided in article 14, section 2, Constitution of Texas of 1876, that land certificates "shall be located, surveyed or patented only upon vacant and unappropriated public domain, and not upon any land titled or equitably owned under color of title from the sovereignty of the State, evidence of the appropriation of which is on the county records or in the General Land Office." The land in question was undoubtedly titled under that constitutional provision and the evidence of its appropriation had, under sanction of legislative enactment, been in the General Land Office for several years before the Constitution was adopted. (Downing v. Diaz, 80 Texas, 436; Von Rosenberg v. Haynes, 85 Texas, 357; Sheldon v. Milmo,

90 Texas, 1.)    The possession in this case extended over a period of
forty or fifty years at least.

The resurvey of *porcion* No. 107, made by the district surveyor of
Starr County in 1879, was properly admitted in evidence.    It showed
the position of *porcion* 107 in regard to other well recognized *por-
ciones,* and certified copies of records from the surveyor's office are
made evidence by statute.    (Rev. Stats., art. 2307.)    The proposi-
tion under the second assignment of error is not pertinent under the
facts of the case to a complaint that copies of record from a sur-
veyor's office were improperly admitted in evidence.    The proposition
is "A survey without a concession or order of survey would not be
a legal appropriation of the land nor notice to anyone that land was
appropriated."    A concession and survey of the land in question had
been made in 1767, and a resurvey of it made, as the record states,
for the heirs of Solis, was authorized and the act of the surveyor
was lawful and proper.    The authorities cited by appellant apply to
original surveys and do not touch the facts of this case.    We might
have disregarded a discussion of this question, as it is not supported
by the bill of exceptions, but great leniency has been exercised towards
the brief of appellant, not only in this particular, but in others, in
order that he might have a hearing in this court.

The third and fourth assignments of error complain of the admis-
sion in evidence of a recital made by the surveyor in his record pre-
ceding the statement of the field notes, made in 1880, in the resurvey
of *porcion* 107, as follows: "Field notes of a resurvey of one and
a fraction leagues or sitios of land situated in Starr County about
fifteen miles north of Rio Grande City, in said county, made for the
heirs and legal assigns of Juan Jose Solis, to whom the said land
was originally granted by the Crown of Spain by a donation bearing
date the year 1767, the said tract being known and called *porcion*
No. 107, of the former jurisdiction of Camargo."    We think the
recitation was permissible as indicating that in 1880 the land was
recognized as being the property of the Solis heirs, but if it was
improperly admitted appellant could not have been damaged by it,
as every fact stated therein was sustained by the charter of Camargo.
He merely stated that he was sent out to survey a body of land
for the Solis heirs, consisting of *porcion* No. 107, which was granted
by the government of Spain to Juan Jose Solis.    Those facts appear
from the charter or Visit, as it it denominated.    His statement could
not have influenced the judgment of the trial judge.

The surveyor acted under authority of the claimants of the land in
making the survey and that was sufficient.    Article 2307, Revised
Statutes, provides that the county surveyor shall record all the sur-
veys in the county or district for which he was elected, with plats
thereof, that he may make, whether private or official, and certified
copies of such record under the official signature of the surveyor
may be used in evidence in any of the courts of this State.

The fifth assignment of error is overruled.    In order to render
the field notes in question evidence under the statute cited, it became
necessary to certify that they were correctly copied from the record,
and the statement in the certificate that the field notes were correctly

copied from a survey of *porcion* No. 107, granted to Juan Jose Solis, in Starr County, was the statement of a fact found in the record. It may be said in regard to the statements found in the preamble of and certificates to the copy of the record of resurvey of the land, that there was other evidence of all ·the facts stated, and under such circumstances, when the trial is before the court without a jury, the erroneous admission of evidence will not be cause for reversal. (Beham v. Ghio, 75 Texas, 87; Moore v. Kennedy, 81 Texas, 144.)

Surveys of tracts adjacent to the one under controversy were admissible as tending to identify that tract. However, there are no propositions under the sixth and seventh assignments of error, but there is a reference under each to the proposition under the third assignment of error, which is to the effect that it is the duty of a surveyor to go on land he intends to survey, with a copy of the field notes by which he is to be guided, and to search for and survey his lines and corners and report the result of his work. There is nothing to indicate that the surveyor, in the cases of the surveys objected to, did not follow the rules laid down by appellant, although there might be a doubt as to whether they should be followed on all occasions. There is no merit whatever in the assignments.

The map of Starr County, which was compiled after this suit was instituted, was objected to as evidence on the grounds, as stated in the bill of exceptions, which is not pointed out in the brief by reference to the page of the record on which it is found, that the map was compiled after appellant's rights had accrued, that it could not have any effect in fixing ·the boundaries, and that the data upon which it was made were not before the court. We do not think the objections were well taken, and appellant evidently is not impressed with their strength, because he abandons them all in his brief and presents the proposition, not found in the bill of exceptions, that "evidence that is immaterial on objection should be excluded, and especially so if it has a tendency to prejudice the rights of party objecting." Of course the proposition has no basis in the bill of exceptions and must fail, but it may be said that in trials, without a jury, the admission of immaterial testimony is not cause for reversal. (Andrews v. Key, 77 Texas, 35.)

The ninth, tenth, twelfth and thirteenth assignments of error, which attack ·the findings of fact of the trial judge, are not well founded and are disposed of by our adoption of the findings and a discussion of the facts herein.

The eleventh assignment of error attacks the finding of the court as to the heirship of Adolfo Solis and grantors of the land to the other appellees, "because not supported by the evidence." The proposition thereunder is: "It is not competent to establish heirship by hearsay evidence." The evidence as· to heirship went in without objection. Of course, the proposition is not germane to the assignment of error and has nothing to rest upon, but it may not be amiss to say that one of the exceptions to the rule against the admission of hearsay evidence is in regard to relationship and pedigree. (Wigmore on Ev., secs. 1480-1503; Fowler v. Simpson, 79 Texas, 611; Nunn v. Mayes, 9 Texas Civ.. App., 366.)

The other assignments of error are met by our conclusions of fact and law hereinbefore set forth.    The judgment is affirmed.

*Affirmed.*