## HORNE v. MOODY.

No. 10659.

Court of Civil Appeals of Texas. San Antonio.

Oct. 21, 1940.

Rehearing Granted in Part Dec. 18, 1940.

Motion for Rehearing Overruled Jan. 8, 1941.

Raymond, Algee & Alvarado, of Laredo, for appellant.

Mann & Mann, of Laredo, and Frank S. Anderson, of Galveston, for appellee.

NORVELL, Justice.

This is an action of trespass to try title brought by A. A. Horne against W. L. Moody, Jr., seeking a recovery of title and possession of Surveys Nos. 1008 and 1009, Jim Hogg County, Texas. Horne established a prima facie case which Moody attempted to rebut by showing that the lands in controversy were within the boundaries of prior grants of the State of Tamaulipas, namely, Las Viboritas, jurisdiction of Mier, Francisco Montalbo original grantee, and El Sordo, jurisdiction of Guerrero, Luis Vela original grantee.

On the trial it was conceded that Moody had title to the land in controversy, provided the same was within the boundaries of the prior Mexican grants. The questions presented are with reference to the true location of the north and west boundaries of the Viboritas and the north and east boundaries of the Sordo.

Trial was to the court without a jury. Judgment was rendered for Moody. Findings of fact and conclusions of law were

filed. Horne brings the case here upon assignments attacking such findings and conclusions.

The following plat shows the approximate location of the surveys and grants in controversy:

We first consider Survey No. 1008. It is appellant's contention that the true north line of the Viboritas is that shown upon the map as the Lara Survey. That contention is sustained by us, and we therefore hold that Survey 1008 is outside the boundaries of the Viboritas, and the trial court was in error in denying appellant judgment therefor.

■ The Viboritas was granted to Francisco Montalbo, a citizen of Mier, by the State of Tamaulipas in 1831. A survey of the grant was made during that year by a State surveyor named Lara. The field notes were introduced in evidence upon the trial, and a surveyor, C. A. Douglas, whose qualifications were admitted by both parties, testified that these original field notes could be followed, and that he had made a re-survey of the grant, following in the footsteps of Lara, and located the grant upon the ground. This re-survey by Douglas has been examined by us and, in our opinion, correctly locates the north line of the Viboritas.

The appellee does not question the accuracy of the Douglas re-survey, but contends that the north boundary line of the Viboritas has been established as an extension of the north boundary line of Survey 162 to the east, and the west boundary line has been established as coinciding with the east boundary line of Survey 162. It is urged that these boundary lines are binding upon the parties to this suit, under the doctrine of "stare decisis," and it appears that the trial court rendered its judgment on this theory.

In 1913, the heirs of A. Allen, deceased, as the owners of Survey No. 162, brought two suits, one against Harry Edds, owner of Survey No. 208, and the other against J. J. Draper and others, as owners of Survey No. 207. These cases were consolidated and tried together. An appeal was taken from the judgment of the district court to this Court. See Allen v. Draper, 204 S.W. 792. Writ of error was granted and final judgment rendered by the Supreme Court, upon the recommendation of the Commission of Appeals. See 254 S.W. 783.

The field notes of the Allen Survey (No. 162) call for the northwest corner of the Viboritas as well as the west boundary line thereof.

The Allen heirs based their suit upon the theory that the true northwest corner of the Viboritas and true northeast corner of Section 162 was located at a point where a line running north from a point known as Chaparros Prietos (clump of black brush) would intersect a line running west from a point marked with two large stones supposed to be the northeast corner of Viboritas, and that there was a conflict between Survey 162 and Surveys 207 and 208. The defendants, or at least some of them, controverted this theory in their pleading and asserted that plaintiffs were attempting to "pull and place said Survey (162) further west than as originally located and thereby lapping the same over, upon and causing the same to conflict" with Surveys 207 and 208, when there was in fact no conflict.

It does not appear that any of the parties to this litigation attempted to locate the northwest corner, or the west line of the Viboritas by using the original Lara field notes to the grant. A surveyor named Hayes Dix testified that Chaparros Prietos had been pointed out by his father as the southwest corner of the Viboritas, and was reputed to be the corner of the grant, although the Chaparros Prietos is not mentioned in the Lara field notes. It also appears that the two large stones taken as the northeast corner were probably established as such by J. E. Martin, who surveyed the grant for a patent as the result of certain court proceedings had in Starr County, which were probably void due to a lack of jurisdiction of the Starr County District Court.

At the conclusion of the testimony both sides admitted that there were no issues of fact to go to the jury, and that the "only issues or issue in the case was one purely of law to be decided by the court."

The holdings of the trial court, this Court and the Supreme Court in the case are sufficiently set out in the opinions reported in 204 S.W. 792, and 254 S.W. 783.

The contention of appellee is that in the former case the trial court must have necessarily determined the northwest corner and west boundary line of the Viboritas, in order to determine the correct location of Survey 162, and the consequent finding of a conflict between Section 162 and Sections 207 and 208; that this finding was approved by this Court and left undis-

turbed and possibly approved by the Supreme Court. His counter-proposition reads as follows: "The trial court had no alternative but to locate the north and west boundary lines of Las Viboritas Grant, and the north and east boundary lines of El Sordo Grant, as he did locate them, because the judgments of the trial court, the Court of Civil Appeals and the Supreme Court, in the case of Allen et al. (204 S.W. 792, and 254 S.W. 783) in so locating such boundary lines were and are binding on the courts in the pending cause under the doctrine of stare decisis."

There is no contention that the doctrine of res judicata has application here, but it seems to be appellee's contention that the principle of stare decisis, in effect, accomplishes the same result in cases involving boundaries, even though there is no identity of parties or subject matter in the two cases. We do not understand that the doctrine of stare decisis as applied to boundary cases in this State has the broad application urged by appellee.

■ In the case of Turner v. Smith, 122 Tex. 338, 61 S.W.2d 792, the Supreme Court had before it the question of the proper construction of Block 194, G. C. and S. F. Ry. Co. Surveys, Pecos County, Texas, and after an exhaustive discussion of the various contentions involved held as a matter of law that the surveys in Block No. 194 should be constructed eastward by course and distance alone, without giving effect to calls for adjoinder on the south with Block 178, T. C. Ry. Co.'s Survey. In Federal Royalty Co. v. State, 128 Tex. 324, 98 S.W.2d 993, the Supreme Court again had before it the question of the proper construction of said Block No. 194, and held that the rule of construction adopted in the Smith-Turner case, was one of law and binding upon the court under the principle of stare decisis. The court cited with approval the following paragraph from Texas Jurisprudence: "Stare Decisis.—The doctrine of stare decisis—under which the determination of a question of law by a court of ultimate resort becomes a part of the law of the state and a precedent governing the decision of subsequent matters involving the same point—differs considerably from the doctrine of res judicata. The rule of stare decisis has reference only to questions of law; it involves no element of estoppel, and it operates upon all persons, and not merely the parties to the particular proceeding and their privies. Thus when the Supreme Court or a Court of Civil Appeals—if the Supreme Court has denied an application for a writ of error—has once given a definite effect to a specific writing or a particular fact situation—as when it determines the true construction of a will or the validity of a deed or a judgment or fixes the boundaries of a particular survey—such determination is binding and conclusive in all subsequent suits involving the same subject matter, whether the parties and the property are the same or not. This result is reached under and by virtue of the doctrine of stare decisis and not under the rule of res judicata." 26 Tex.Jur. p. 46, § 368.

■ As we understand the rule of stare decisis in this State it is one of precedent and authority. It is based upon the statement of a principle, rule or proposition of law by the Supreme Court or the highest court in the State having jurisdiction of the particular case. In a boundary suit the adoption of a particular legal proposition, such as a rule of construction, generally results in a judgment establishing a certain boundary. The doctrine of stare decisis, however, is based upon the legal principle or rule involved and not upon the judgment which results therefrom. In this particular stare decisis differs from res judicata, which is based upon the judgment.

Appellee points out that this Court, in Allen v. Draper, supra, said: "The [trial] court by its decree has determined that the two parcels of land herein sued for are located in survey No. 162 * * *. The evidence is sufficient to support this finding by the court. This proof was offered by appellant to sustain his contention. The question of the exact location of the land and the question of whether or not there is a conflict in the location of the three surveys is therefore eliminated" (loc. cit. 204 S.W. 792). It is appellee's contention that this Court thereby expressly approved and adopted the trial court's holding with reference to the location of the Survey No. 162. If this be true, the record discloses that the principles or rules of law involved in the holding are those stated by Allen as propositions in his brief, as follows:

"When the unmarked line or corner of a survey calls for an unmarked line or

corner of an adjacent survey whose corner line is or may be established upon the ground with certainty the call will have the dignity of an artificial object. * * *

"Where the southwest and northeast corners of a survey are well established and undisputed on the ground, and the northwest corner is uncertain and the west and north lines of the surveys are run out on course their point of intersection will constitute the northwest corner of the survey."

■ These rules or propositions in no way conflict with the principles of law involved in our holding here. We hold that the field notes of the original Lara survey are controlling in locating the true north boundary of the Viboritas. There is no conflict upon any point of law between our decision in this case and the former decision of this Court or the Supreme Court in Allen v. Draper, supra. There is no conflict of judgments. Neither the parties nor the subject matter of the two suits is the same.

An entirely different situation was presented in the case of Federal Royalty Company v. State, supra [128 Tex. 324, 98 S.W.2d 996], wherein Judge Hickman pointed out that: "We are confronted here with conflicting judgments, as well as with conflicting principles of decision."

As to Survey No. 1009, we have concluded that the trial court was in error in refusing appellant a recovery of that part of said survey lying west of the west line of the Viboritas, as surveyed by Douglas in following the Lara field notes.

The Sordo Grant was made to Luis Vela, a citizen of Guerrero in the State of Tamaulipas, and surveyed by Antonio Canales, a State surveyor. His field notes could not be located and were not introduced in evidence. A plat made in connection with the grant merely shows that the Sordo was in the form of a parallelogram 200 cordeles east and west by 250 cordeles north and south. The title of Luis Vela to the grant was confirmed by the Texas Legislature in 1852, and, as a result thereof, R. C. Trimble, a State Land Surveyor, made a survey of the Sordo and field notes of the grant in 1853. Trimble's field notes are as follows:

"Situated in Starr County, beginning 58,-600 vs. S. 77 deg. 45' W. from the southeast corner of McKinney & Williams large survey on the Los Olmos creek, at the old original post and stone corner set for N. E. corner of this survey.

"Thence S. 12,500 vs. to a post in open prairie, no trees in sight.

"Thence W. 10,585 vs. to a post in open prairie, no trees in sight.

"Thence N. 12,500 vs. to the old original post and stone corner, called 'Lindero de las Cabesas.'

"Thence E. 10,585 vs. to the place of beginning, being the old original N. E. corner, called 'Lindero de los Conejos,' containing 132,312,500 square varas of pasture land."

Attached to the field notes was a plat which contained a tie call for the northeast corner of the Sordo to be situated N. 20 deg. 41' West 19,985 varas from the Upper Agua Nueva Grant.

C. A. Douglas testified that he could not find or locate any of the corners described in Trimble's field notes; that by actual survey upon the ground, he found that the tie call for the McKinney and Williams Survey was erroneous and would locate the northeast corner of the Sordo, two and three-fourths miles south and two miles east of its present recognized position, and cause it to conflict with numerous surveys and grants; and that an actual survey on the ground from the Upper Nueva, as now recognized on the ground, would place the northeast corner of the Sordo about two miles south and a half mile west of its present recognized position.

■ It appears, however, that shortly after he surveyed the Sordo, Trimble also surveyed and prepared field notes for the Palitos Blancos and San Antonio de Baluarte Grants. Part of Palitos Blancos lies immediately to the east of the Sordo, and part of the Baluarte lies immediately to the north of Palitos Blancos. These field notes having been prepared in the same year as the notes for the Sordo were admissible in evidence in order to show where Trimble actually ran the lines of the Sordo. State v. Dayton Lumber Co., Tex.Civ.App., 159 S.W. 391; Sullivan v. Solis, 52 Tex.Civ. App. 464, 114 S.W. 456; 7 Tex.Jur. 224.

Plats accompanying Trimble's field notes of these grants surveyed by him in 1853 present the following composite picture: W. cor. of 'San Antonio Baluarte' and at 7300 vs. the place of beginning, containing 71,350,000 square varas prairie land."

From the testimony of Douglas, it appears that the present recognized location of the southwest corner of the Baluarte Grant is the same as that recognized by Trimble in 1853, when he surveyed the grant. There is no dispute between the parties as to the location of this corner.

The Trimble field notes of Palitos Blancos read as follows:

"Beginning at the N. E. cor. of this survey on the south boundary line of the grant called 'San Antonio Baluarte' being a large forked stake surrounded by bones which is the original corner—no bearing trees.

"Thence South with the East boundary at 9,500 vs. the old original N. W. cor. of 'Agua Nueva de Arriba,' which is the S. E. Cor. of this survey—no bearing trees.

"Thence West 7,300 vs. to the old original S. W. corner of this survey, which is a large pile of rocks—no bearing trees.

"Thence North at 6400 vs. passed the S. E. cor. of 'El Sordo,' thence with east boundary of that tract at 9,500 vs. a post set on said east line of El Sordo piled round with rocks for the N. W. cor. of this survey—no trees near.

"Thence east with the north boundary of this survey, at 4,400 vs. passed the S.

From these field notes it appears that Trimble had located the east line of the Sordo, a distance of 4400 varas west of the southwest corner of the Baluarte, and that he had located the southeast corner of the Sordo at a point 3100 varas south of where an extension of the south boundary line of Baluarte, which is the north boundary line of Palitos Blancos, intersects the east line of the Sordo. The east line of El Sordo coincides with the west line of Palitos Blancos, and the northeast corner of the Sordo is therefore properly located by extending this line to a point 9400 varas north of the northwest corner of Palitos Blancos to satisfy Trimble's call for distance in the east boundary line of El Sordo, which is 12,500 varas. The north boundary line of the Sordo is properly located by reversing Trimble's call and running west from the northeast corner according to the field notes. Jones v. Andrews, 72 Tex. 5, 9 S.W. 170; Burge v. Poindexter, Tex.Civ.App., 56 S.W. 81.

The view above taken as to the correct location of the northeast corner of the Sordo is further substantiated by considering the tie call to the Upper Agua Nueva shown in the plat accompanying Trimble's field notes of the Sordo. From the field notes

of Palitos Blancos, it appears that Trimble considered the old original northwest corner of the Agua Nueva de Arriba as being the same as the southeast corner of Palitos Blancos.

Upon the trial, Douglas testified as follows: "Going to the southwest corner of San Antonio Baluarte grant, which is now recognized as the southwest corner, running east 2900 varas and running south 9500 varas for the southeast corner of Palitos Blancos and the northwest corner of Agua Nueva grant, calculating a tie as called for running north 20 deg. 41' West, 19,985 varas, would place the northeast corner of El Sordo grant 308 varas south and 1040 varas east of its present recognized position."

We therefore conclude that no part of Survey 1009 is included within the boundaries of the Sordo.

As indicated on the map showing the location of Survey 1009, the east part thereof is within the boundaries of the Viboritas if Douglas' survey following in the footsteps of Lara be taken as establishing the true west boundary line of the Viboritas. In our opinion Douglas' re-survey does establish the true west line of the Viboritas, unless it can be said that appellee is restricted to the Martin (patent) survey, under the rule stated in Kenedy Pasture Company v. State, Tex.Civ.App., 196 S.W. 287, loc. cit. 293. This rule is clearly one of estoppel. The Martin survey was made as a result of certain court proceedings evidently instituted under the Act of February 11, 1860, as amended by Sp.Laws 1862, p. 46. Appellant here takes the position that these proceedings were void under the holding of Texas-Mexican Ry. Co. v. Jarvis, 80 Tex. 456, 15 S.W. 1089. The Martin field notes therefore cannot be made the basis of an estoppel in favor of appellant and against appellee in this particular, and appellant does not so contend in his brief filed in this Court.

Appellant's motion for rehearing is granted to the extent herein indicated; appellee's motion for rehearing is overruled. The original opinion is withdrawn and this one substituted therefor. Leave is hereby granted the parties to file second motions for rehearing should they desire to do so. The trial court's judgment in so far as it awards to appellee that part of Survey No. 1009, lying east of the west line of the Viboritas, as established by Douglas following the Lara field notes, is affirmed. In all other respects the judgment of the trial court is reversed and judgment here rendered that appellant recover all of Survey No. 1008, and that part of Survey No. 1009 lying west of the west line of the Viboritas as established by Douglas following the Lara field notes. Costs are taxed against appellee.

Affirmed in part; reversed and rendered in part.