No. 31,432

D. W. DYE and ETHEL DYE, *Appellants*, v. ELBERT S. RULE and MINNIE KEMP, doing business as THE GOLDEN RULE REFINING COMPANY, *Appellees*.

(28 P. 2d 758.)

Opinion filed January 27, 1934.

*W. A. Ayres, Austin M. Cowan, C. A. McCorkle, J. D. Fair, W. A. Kahrs* and *R. H. Nelson*, all of Wichita, for the appellants.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson, F. W. Aley* and *Carl G. Tebbe*, all of Wichita, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action for wrongful death. The jury answered special questions and returned a verdict for plaintiffs. Defendants moved for judgment in their favor on the answers to special questions notwithstanding the general verdict. The trial court sustained this motion, and plaintiffs have appealed.

In their petition plaintiffs allege that their son, Dee M. Dye, a boy of intelligence, in good health, and able-bodied, on the evening of January 9, 1932, was fatally burned by an explosion of denatured alcohol, or some other highly inflammable substance, at a filling station owned and operated by defendants through their employees and agents; that at the time of his death he was working and contributing from his earnings about $10 a week to the support of plaintiffs; that at the gasoline filling station so owned and operated by defendants there were stored highly inflammable and explosive liquids, including gasoline and denatured alcohol, which were stored

in tanks or drums; that a part of the service station was a small room about eight feet by eight feet which contained a stove heated by an oil burner with an open flame, in which room were drums or tanks of lubricating oil and a similar drum or tank of denatured alcohol, which containers occupied a large part of the room; that the filling station attendant carried pop, candies, and similar merchandise; that the deceased on several occasions had visited the premises for the purpose of buying such merchandise, and at the time of the explosion which caused his fatal injuries was on the premises as an invitee; that defendants invited the public to use the premises, including the building in which denatured alcohol and other explosive liquids were stored; that near the building was stored liquid of a highly inflammable and explosive nature; that defendants and their attendants and employees were aware of the dangerous character of the denatured alcohol and other liquids, and that it was dangerous to permit any of such liquids to be exposed where they might come in contact with flame, or permit them to leak out, or to be exposed; and that by reason of the nature of such liquids and their dangerous character the duty rested upon defendants and their employees to use the highest degree of care in protecting the public, including the deceased; that in violation of such duty the servants and agents of defendants, particularly one Bruce Romac, permitted denatured alcohol or other highly explosive liquids, to run out upon the floor while the deceased was in the room; that such servant and agent knew the liquid was upon the floor and other exposed surface and neglected to wipe up or remove the same, but permitted it to remain and throw off gas fumes in the air; and shortly thereafter, while deceased was present, the attendant lighted a cigarette, from which open flame, or the open flame in the stove, an explosion occurred, which explosion enveloped the deceased in flames, from which he was fatally burned; that defendants were negligent in failing to keep such explosive liquids in proper containers safe and free from open flames, in failing to prohibit smoking on the premises, in maintaining a fire with an open flame in the building, in failing to wipe up and remove exposed denatured alcohol or other inflammable liquid from the floor or other exposed surfaces, in striking a match and lighting a cigarette on the premises while the highly explosive and dangerous liquid was exposed and giving off gas fumes, and in failing to maintain a safe place to which the public had been invited by defendants to come.

The answer denied the negligence alleged by plaintiffs, and expressly denied that the deceased at the time of the explosion was on the premises of defendants by reason of any invitation by the defendants or their servants, either express or implied, but alleged that he was there without right, invitation, permission, or license, and for his own pleasure and convenience; that he had come upon the premises to loaf, and was loafing, contrary to rules of defendants, of which the deceased had knowledge. The answer further pleaded specific acts of negligence of the deceased which caused the explosion and resulted in his injury. The reply was a general denial.

The jury returned a general verdict for plaintiffs for $750 and answered special questions as follows:

"1. State whether the defendants had a rule forbidding filling station attendants to allow persons to loaf in the defendants' station. A. Yes.

"2. If you answer question No. 1 in the affirmative, state whether Dee Dye had knowledge that loafing was not allowed in defendants' station. A. Yes.

"3. If you answer question No. 2 in the affirmative, state whether the death of the deceased was the result of his violation of said rule. A. Yes.

"4. On the night of the accident, was Dee Dye at the filling station of defendants on any business connected with the business carried on there by the defendants? A. No. . . .

"6. At the time of the accident, did the defendants have for sale at this station, soda pop, candy, gum confections or neckties? A. No.

"7. State whether Dee Dye became aware that denatured alcohol had been spilled on the top of an alcohol drum or on the floor in the station shortly before the accident. A. Yes.

"8. If you answer question No. 7 in the affirmative, state whether Dee Dye had been smoking a pipe in the station after becoming aware of the spilled alcohol. A. No.

"9. State what caused the explosion. A. Combustion of fumes from exposed denatured or radiator alcohol caused by lighted match.

"10. If you find that the explosion was caused by the act of some person, state: (a) Who that person was. A. Bruce Romac. (b) What that person did. A. Lighted a match.

"11. Do you find that the defendants were guilty of any negligence? A. Yes.

"12. If you answer question No. 11 in the affirmative, state what that negligence consisted of. A. Attendant's neglect in not wiping up spilled alcohol.

"13. State whether the defendants had a rule forbidding persons to smoke in the defendants' stations. A. Yes.

"14. If you answer question No. 13 in the affirmative, state whether Dee Dye had knowledge that smoking was not allowed in the defendants' station. A. Yes.

"15. If you answer question No. 14 in the affirmative, state whether the death of the deceased was the result of his violation of said rule. A. No."

As this case is presented to us, broadly speaking, there is but one question for our determination, namely, Are the special questions and answers thereto so in conflict with the general verdict that the latter cannot stand? (R. S. 60-2918; *Commerce Trust Co. v..Pioneer Cattle Loan Co.*, 120 Kan. 712, 244 Pac. 840; *Doty v. Crystal Ice & Fuel Co.*, 122 Kan. 653, 253 Pac. 611.) In determining that question we look to the pleadings, the special questions with their answers, and the general verdict. (*Atyeo v. Leidigh & Havens Lbr. Co.*, 136 Kan. 818, 819, 18 P. 2d. 118.) The transcript and abstract of the testimony are not important (*Richards v. Kansas Electric Power Co.*, 126 Kan. 521, 526, 268 Pac. 847), for the facts are to be considered as having been found by the jury in so far as questions relating to such facts were submitted to the jury. The controversy raised by the pleadings as to who caused the explosion is answered by the finding that it was caused by defendants' employee, Bruce Romac, by lighting a match. It is also determined that the explosion was a combustion of the fumes of exposed denatured or radiator alcohol, and that defendants were negligent in that their employee neglected to wipe up spilled alcohol.

The answers further show that defendants had a rule forbidding persons to smoke in the station; that the deceased, Dee M. Dye, knew smoking was not allowed there, and he also knew that denatured alcohol had been spilled on the drum and floor of the station shortly before the accident.

The jury further found that defendants did not have for sale at the station soda pop, candy, or similar merchandise. It further found that defendants had a rule forbidding their attendants to allow persons to loaf in the filling station; that the deceased had knowledge that loafing was not allowed there, and that his death was the result of his violation of that rule; and further specifically found that the deceased was not at the filling station on any business there conducted by defendants. This finding disposes of appellants' contention that the deceased was on the premises as an invitee. (*Kurre v. Graham Ship By Truck Co.*, 136 Kan. 356, 15 P. 2d 463.) He was there, in fact, in opposition to the wish of defendants, of which opposition he was well aware.

In the law relating to liability for negligence it is fundamental that one, even though negligent, is not liable to another to whom he owed no duty. (45 C. J. 639; 20 R. C. L. 9-11.) Certainly, under the situation here found, defendants owed the deceased no duty on

which a liability for their negligence could be predicated. In order to conduct the business in which they were engaged the defendants necessarily carried in stock highly inflammable fluids. They prepared a small room in which to keep some of these, and to avoid possibility of injury to others had made it known that loafing on the premises or in this room was not permitted, and the deceased was well aware of that rule. The deceased was an intelligent boy seventeen years of age. There is no intimation in the pleadings or the findings that he did not know the dangerous character of these fluids, and it is specifically found that he did know he was not permitted to loaf on those premises. We are unable to see that defendants owed to the deceased any duty that would make them liable, even though they were negligent. In determining this specific question we are dealing with negligence, not with willful injury, for there is no question of willful injury in this case.

It is argued by appellants that notwithstanding what has been said defendants' employee, the station attendant, permitted the deceased to loaf on the premises and in the room wherein inflammable liquids were stored; that defendants' employee, Bruce Romac, permitted the deceased to loaf there, although both of them knew it was in violation of defendants' rule, and that defendants' employee lighted a cigarette knowing it was against the rules of defendants to smoke on the premises, a fact which the deceased also knew; and it is argued that the violation by the defendants' employee of these provisions imposes a liability upon defendants. With this contention we cannot agree. This action is not against the attendant, Bruce Romac; it is against the owners of the filling station and the employers of Romac. It is not contended nor found that the defendants knew the deceased was loafing on the premises in violation of their rules, or that Romac was smoking cigarettes on the premises in violation of their rules. In this respect the rule announced in *Mayhew v. DeCoursey*, 135 Kan. 184, 10 P. 2d 10, applies. It was held:

"Where a truck driver without authority from his employer so to do permits one not employed to ride his truck, and the one permitted to ride is injured by the negligence of the driver, the employer of the truck driver is not liable even though the negligence of the driver was wanton." (Syl. ¶ 2.)

In the Restatement of the Law of Agency of the American Law Institute, section 242, the rule is thus stated:

"A master is not subject to liability for the conduct of a servant towards a

person harmed as the result of accepting or soliciting from the servant an invitation, not binding upon the master, to enter or remain upon the master's premises or vehicle, although the conduct which immediately causes the harm is within the scope of the servant's employment."

And in the comment thereon it was said:

"The rule stated in this section is applied most frequently where a servant intrusted with the custody of a vehicle, without authority or apparent authority to do so, permits or invites persons to ride thereon. The rule applies also, however, to persons entering land with the permission of an employee. It applies as well to persons who, although not upon the employer's land or vehicle, are harmed because they have solicited or accepted the unauthorized invitation of the servant."

So, even if the record of this case disclosed that the employee, Romac, permitted the deceased to loaf on the premises, that permission was unauthorized by his employers, the defendants in this case; and, more than that, the deceased knew it was unauthorized. In this case the facts found by the jury show as a further reason for nonliability of the employers the fact that the act of the attendant which caused the explosion was one which was unauthorized and forbidden by his employers, the defendants here, a fact well known to the deceased.

Appellants argue that denatured alcohol is so inflammable and explosive that it should be put upon the same plane with reference to the care with which it is handled as nitroglycerine and other high explosives and high-power electric currents; hence, that defendants were under the duty of exercising the highest degree of care with respect to its storage and handling. Cases are cited by appellees in opposition to this view. We do not regard the argument as especially important in this case, nor find a necessity for a careful determination of it. For the purposes of this case it may well be conceded that whatever the degree of inflammability of denatured alcohol or other fluids kept by defendants may have been, it was the duty of defendants to use that degree of care commensurate with the danger involved in their storage and use. The findings disclose that defendants used that care, at least to the extent of forbidding loafing on the premises or smoking thereon—facts well known to the deceased. This explosion and resulting injury did not occur because defendants had not taken that care, but rather because the deceased would not conform to the safety measures provided by defendants. In answer to question 3 the jury specifically found that the death of the deceased was the result of his

failure or refusal to conform to rules made by defendants designed for the safety of himself and others.

In view of the facts found by the jury, and the law applicable thereto, there was no liability on defendants, and the trial court correctly entered judgment for them on the answers to the special questions notwithstanding the general verdict.

The judgment of the court below is affirmed.

HUTCHISON, J., not sitting.