Michelle Lyn **SHANNON**, a minor, by and through her duly appointed Next Friends, Michael Keith Shannon and Esther Jean Shannon, Plaintiff,

v.

**PACIFIC RAIL SERVICES, L.L.C., a Delaware corporation, and Arrow Vogel, Defendants.**

No. 98–2451–JWL.

United States District Court, D. Kansas.

Sept. 28, 1999.

Thomas E. Hankins, Deborah D. Conklin, Thomas E. Hankins, P.C., Gladstone, MO, for plaintiff.

Charles A. Getto, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, William P Ryan, Ray, Robinson, Carle, Davies & Snyder, P.L.L., Chicago, IL, for Pacific Rail Services, L.L.C., defendant.

Michael B. Dunalewicz, Overland Park, KS, for Arrow U. Vogel, defendant.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This is a diversity action for the allegedly wrongful death of Jennifer Shannon, who was killed after she was struck by a hostler truck operated by defendant Arrow Vogel, an employee of defendant Pacific Rail Services, L.L.C. ("Pacific Rail"). The matter is presently before the court on defendant Pacific Rail's motion for summary judgment (doc. 75). Also before the court is defendant Arrow Vogel's motion for reconsideration of the court's August 18, 1999 order imposing sanctions (doc. 94). For the reasons set forth below, defendant Pacific Rail's motion for summary judgment is granted, and plaintiff's claims against Pacific Rail are dismissed in their entirety. Additionally, defendant Vogel's motion for reconsideration is denied.

### I. Background

Plaintiff Michelle Lyn Shannon, a minor child, brings this wrongful death action by and through her duly appointed next friends, Michael and Esther Shannon, on behalf of her deceased mother, Jennifer Shannon. At the time of her death, Jenni-

fer Shannon was seventeen years old and a citizen of Jackson County, Missouri.

Defendant Pacific Rail is a Delaware corporation with its principal place of business in a state other than Missouri. In June of 1998, Pacific Rail entered into a service contract with the Union Pacific Railroad ("UP"). Pursuant to the terms of the contract, Pacific Rail employees were charged with the duty of loading and unloading freight containers onto, and off of, the railway cars that traveled through UP's Armourdale depot located in Kansas City, Kansas. Additionally, Pacific Rail was responsible for transporting freight trailers and containers within the confines of the Armourdale railyard, a practice known in the railroad industry as "hostling." Hostling is accomplished by moving the desired containers on chassis located in the train yard with a small truck called a "hostler."

On August 24, 1998, defendant Vogel, currently a citizen and resident of Florida, was hired by Pacific Rail to work in UP's Armourdale railyard. As part of his job duties, Vogel performed hostling services, and often operated Hostler No. 48 to load, unload, and move freight trailers and containers about the Armourdale facility.

At approximately 10:40 p.m. on the evening of September 26, 1998, Ms. Shannon and Robert Horton were driven to the Armourdale facility by their friend, Dennis Jacobs. After Mr. Vogel spotted Mr. Jacobs' car, he drove his hostler over to where the car was parked. At that time, Ms. Shannon got out of Mr. Jacobs' car, entered the Armourdale railyard, and climbed into the cab of the hostler in which Mr. Vogel was then sitting. The purpose of Ms. Shannon's visit was, according to the parties, to ask Mr. Vogel whether she could borrow money from him and wheth-

er he would give her a ride to her home after he completed his workshift that night. After concluding their conversation, Ms. Shannon exited the cab of the hostler truck. Within minutes after climbing out of the hostler cab, she was struck and killed by the truck after it began moving forward.[1]

On October 5, 1998, this wrongful death action was filed, seeking damages against defendant Pacific Rail on a theory of respondeat superior for the alleged negligence of its employee, Arrow Vogel. On March 8, 1999, plaintiff amended her complaint to include a claim for negligence against Mr. Vogel. Defendant Pacific Rail moves for summary judgment with respect to the claims asserted against it, arguing that no legal basis exists to attribute liability to Pacific Rail for the alleged negligence of defendant Vogel.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve

1. The court notes that a factual dispute exists as to whether Ms. Shannon actually stepped away from the truck or whether she was still on the hostler when it began to move. Because the court concludes that in either event Ms. Shannon was a trespasser as to defendant

Pacific Rail such that Pacific Rail is not liable for defendant Vogel's alleged negligent operation of the truck, a resolution of the dispute is unnecessary to the court's determination of the issues presently before the court.

the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### III. Discussion

#### A. Defendant Pacific Rail's Motion for Summary Judgment

■ It is undisputed by the parties that Ms. Shannon's visit to the Armourdale railyard was entirely unrelated to defendant's business operation. Defendant contends that Ms. Shannon's visit to the business premises was unauthorized because Mr. Vogel had no authority, actual, apparent, implied, or otherwise, to invite her to his place of work or into the cab of his hostler truck. Consequently, defendant maintains, it is entitled to summary judgment because the status of Ms. Shannon with respect to Pacific Rail was that of a trespasser, to whom the only duty owed was to protect her from willful or wanton conduct. In response, plaintiff claims that defendant Pacific Rail is vicariously liable for defendant Vogel's allegedly negligent operation of the hostler truck which, according to plaintiff, ultimately resulted in Ms. Shannon's death. Plaintiff maintains that summary judgment is inappropriate with respect to her claims against Pacific Rail because material fact issues exist as to whether Pacific Rail implemented and enforced its "no riders" policy, whether Mr. Vogel was specifically instructed not to allow riders in the hostler truck, and whether Mr. Vogel actually operated the hostler while Ms. Shannon was inside the vehicle.

■ Under Kansas law, an employer is vicariously liable under the theory of respondeat superior for torts committed by an employee or agent acting within the scope and course of his or her employment. *See Williams v. Community Drive-in Theater, Inc.*, 214 Kan. 359, 366, 520 P.2d 1296 (1974). "[A]n employee is acting within the scope of the employment if the employee is performing services for which the employee has been employed or is doing anything reasonably incidental to the employment." *Commerce Bank of St. Joseph, N.A. v. State*, 251 Kan. 207, 210, 833 P.2d 996 (1992) (citing PIK Civ.2d 7.04).

■ An exception to the doctrine of respondeat superior has been recognized by Kansas courts, however, where an employee, without actual or apparent authority to do so, extends an invitation to a third party to visit the employer's premises and

the third party is injured by the employee's tortious conduct while there. *See, e.g., Dye v. Rule,* 138 Kan. 808, 28 P.2d 758 (1934); *Mayhew v. DeCoursey,* 135 Kan. 184, 10 P.2d 10 (1932); *Hall v. Atchison, Topeka & Santa Fe Rwy. Co.,* 349 F.Supp. 326 (D.Kan.1972) (applying Kansas law). In such a case, the status of an unauthorized guest with respect to the employer is that of a trespasser. *Hall,* 349 F.Supp. at 329 (summarizing the holdings in *Mayhew* and *Dye* ). Under Kansas law, "[a] trespasser is defined ... as one who enters the premises of another without any right, lawful authority, or an express or implied invitation of license." *Jones v. Hansen,* 254 Kan. 499, 510, 867 P.2d 303, 310 (1994). "A possessor of the premises upon which a trespasser intrudes owes a trespasser a duty to refrain from willfully, wantonly, or recklessly injuring him or her." *Id.*[2]

The court's research reveals that the "duty owed to a servant's invitee" issue has been litigated somewhat rarely under Kansas law; indeed, the three cases relied upon by defendant appear be the only reported Kansas cases on the issue. In *Mayhew v. DeCoursey,* the earliest of these cases, the plaintiff sought damages for injuries he sustained while traveling as a passenger in a truck owned by defendant employer and operated by one of its employees. *Mayhew,* 135 Kan. at 184, 10 P.2d at 11. There, the Kansas Supreme Court held that, in the absence of any evidence that the employee was authorized to invite a guest to ride with him in the employer's vehicle, the unauthorized guest's presence in the truck amounted to a trespass. *Id.* at 12. Accordingly, defendant employer was not liable to plaintiff for the injuries resulting from the negligence of its employee driver. *Id.*

Two years later, the Kansas Supreme Court was again faced with the issue of determining an employer's liability to an unauthorized guest of his employee. *Dye,* 138 Kan. at 808, 28 P.2d at 758. In that case, damages were sought for the death of a boy who was fatally burned when an explosion resulting when a match struck by defendants' employee caused denatured alcohol stored at defendant's filling station to ignite. *Id.* at 810, 28 P.2d at 759. Citing its earlier decision in *Mayhew,* and relying heavily upon § 242 of the Restatement (Second) of Agency, the Kansas Supreme Court held that, because the employee was not authorized to invite the decedent onto the premises, and because the decedent had no business to conduct while there but had instead chosen to visit the filling station for the sole purpose of "loafing," defendants owed the deceased no duty upon which liability for the employee's negligence could be predicated. *Id.* at 812–13, 28 P.2d at 760.

The most recent analysis of Kansas law regarding an employer's liability for injuries sustained by an employee's unauthorized guest is set forth in *Hall v. Atchison, Topeka, & Santa Fe Railway Company,* 349 F.Supp. 326 (D.Kan.1972). Addressing facts similar to those considered in *Mayhew,* the *Hall* court held that, under Kansas law, "[o]ne who accepts a ride with a servant who has no express or implied authority to invite passengers ... is as to the master a trespasser to whom no duty is owed except not to willfully injure him." *Hall,* 349 F.Supp. at 329. Accordingly, because the employee in that case "was acting outside the scope of his employment when he invited the plaintiff to ride," defendant employer was not vicariously liable for injuries allegedly sustained by plaintiff as a result of its employee's negligent driving. *Id.*

---

2. The court notes that the Kansas Supreme Court has recently abolished the distinction between licensees and invitees, at least with respect to the legal duty owed by a landowner to both classes of visitors, holding that "[t]he duty owed by an occupier of land to invitees and licensees alike is one of reasonable care under all the circumstances." *Jones v. Han-*

*sen,* 254 Kan. 499, 509, 867 P.2d 303, 310 (1994). With respect to the duty owed trespassers, however, the court expressly stated that "the effect of the common-law classification of a tort plaintiff as a trespasser is to remain unchanged." *Id.* at 510, 867 P.2d at 310.

The holdings in *Mayhew, Dye,* and *Hall* comport with, and, in the cases of *Dye* and *Hall,* are expressly predicated upon, the general rule governing an employer's liability to an invitee of the employer's servant as set forth in the Restatement (Second) of Agency. *See* RESTATEMENT (SECOND) OF AGENCY § 242 (1958). Section 242 of the Restatement provides:

> [a] master is not subject to liability for the conduct of a servant towards a person harmed as a result of accepting or soliciting from the servant an invitation, not binding upon the master, to enter or remain upon the master's premises or vehicle, although the conduct which immediately causes the harm is within the scope of the servant's employment.

*Id.* Comment a to that section explains that

> [t]he rule stated in this Section is applied most frequently when a servant entrusted with the custody of a vehicle, without authority or apparent authority to do so, permits or invites persons to ride on it. The rule applies also, however, to persons entering land with the permission of an employee. It applies as well to persons who, *although not upon the employer's land or vehicle, are harmed because they have solicited or accepted the unauthorized invitation of the servant.*

*Id.* cmt. a (emphasis added). Comment b to § 242 addresses the status of one visiting an employee at the employer's place of business:

> If a servant is authorized or apparently authorized to invite persons upon the vehicle or premises of the master, a person so invited is a guest of the master, and, if the entry is for business purposes, he is a business visitor.

*Id.* cmt. b.

In her papers, plaintiff argues that, at the very least, a fact issue exists as to whether defendant Pacific Rail had knowledge that non-employees regularly visited the premises, such that, by its failure to object to the presence of its employees' guests, a reasonable factfinder could infer that the employees were impliedly authorized by Pacific Rail to invite guests onto the premises. To support this theory, plaintiff offers the following: Mr. Horton's testimony that "someone driving a white pick up truck" allegedly observed Ms. Shannon and Mr. Horton arrive at the railyard on the night of the accident, and advised them as to Mr. Vogel's whereabouts on the property; Mr. Vogel's testimony that Darrell Whisenant and Rick White [3] *may* have seen Mr. Horton visiting Mr. Vogel earlier that day; and Mr. Vogel's testimony that Mr. White *may* have been able to see Ms. Shannon from the crane in which Mr. White was sitting at the time of the accident. Accepting these somewhat vague factual assertions as true for purposes of summary judgment, because plaintiff offers no factual basis from which a reasonable factfinder could infer that any of these "witnesses" acted on behalf of Pacific Rail or why their knowledge of these non-employees' presence is somehow attributable to Pacific Rail, plaintiff's claim that Mr. Vogel was impliedly authorized to invite social guests to the business premises fails. Indeed, although Mr. White and Mr. Whisenant testified that non-employees would sometimes pay visits to Pacific Rail employees at the Armourdale facility, both witnesses testified that any such visitors were required to meet the employees at the facility's business office, and were not permitted to proceed beyond that point. With the exception of Mr. Whisenant's extremely vague assertion that he had once before seen Ms. Shannon on the premises,[4] there

---

**3.** Although their precise job descriptions are somewhat unclear from the parties' papers, it is clear that Mr. Whisenant and Mr. White were employed by Pacific Rail in some capacity at the time of the accident.

**4.** Although he testified that he had seen Ms. Shannon on the premises once before, Mr.

are no facts in the record to suggest that any observation of non-employees' presence in the actual railyard occurred on any day other than the day of Ms. Shannon's death, and, therefore, there is simply no basis from which a reasonable factfinder could conclude that, by its failure to discipline its employees for inviting friends to visit the Armourdale premises, Pacific Rail employees were impliedly granted permission to invite social guests into the trainyard itself. Thus, despite plaintiff's arguments to the contrary, the court concludes that no fact issue exists as to whether Pacific Rail regularly permitted its employees to invite acquaintances onto the business property. Accordingly, plaintiff's argument that Ms. Shannon was elevated to the status of a licensee or invitee with respect to Pacific Rail such that Pacific Rail owed her a duty of reasonable care fails under the facts of this case. *See Mayhew*, 135 Kan. at 189, 10 P.2d at 12 (where plaintiff alleged that foreman observed him getting into the truck, that fact held insufficient "to justify a conclusion that appellee was the licensee or invitee of the company.")

Nor is it of any consequence whether Pacific Rail had adopted an express policy disallowing non-employee riders on the hostler trucks, whether that policy was or was not enforced, or whether Mr. Vogel was expressly instructed as to the existence of that policy.[5] With regard to this issue, plaintiff adamantly maintains that disputed issues of fact exist as to whether there were "NO RIDERS" signs posted on the dashboards and doors of Mr. Vogel's hostler truck, and, providing that any such signs were so posted, whether Mr. Vogel or Ms. Shannon saw them. Further, although plaintiff admits that Pacific Rail's employee safety manual expressly forbade the practice of allowing others to ride inside the hostlers, plaintiff states that because Mr. Vogel testified that he never received any such materials, a material fact issue remains for trial as to whether Mr. Vogel had knowledge of the "no riders" policy. Finally, plaintiff attempts to dispute defendant's factual assertion that Mr. Vogel never received consent from Pacific Rail to allow non-employee passengers in the hostler by referring the court to Mr. Vogel's deposition in which he testified that he did not think that he was required to seek permission from his employer before allowing others to ride in his hostler.

The court concludes that any dispute as to whether Mr. Vogel was actually informed of Pacific Rail's "no riders" policy is inapposite to the resolution of defendant's motion for summary judgment. Even assuming that Pacific Rail's "no riders" policy was not specifically communicated to Mr. Vogel, there is nothing in the evidentiary record to suggest that this failure to expressly instruct Mr. Vogel could have been interpreted as devolving upon Mr. Vogel the authority to offer rides in the hostler to his friends. As explained by the *Hall* court,

> [t]he owner of a motor vehicle is not liable, under the doctrine of respondeat superior, from injuries resulting from an employee's negligent operation of the vehicle, to a person invited or permitted

Whisenant could not offer any approximation as to when that occurred.

5. The court notes that it is undisputed that, on some occasions, Pacific Rail employees allowed their co-employees to ride in the hostler cab. Plaintiff claims that because this practice directly defied company policy forbidding any riders in the hostler trucks, the fact that employees were sometimes given rides in the hostlers somehow conferred upon Pacific Rail employees the implied authority to allow non-employees to ride in the hostlers.

This argument fails to take into account the fact that, in any event, there existed no express or implied authority to allow non-employee guests to visit the railyard in the first place; indeed, there are simply no facts in the record currently before the court to suggest that the act of allowing a co-employee to ride in a hostler, while contrary to Pacific Rail's "NO RIDERS" policy, bestowed upon Pacific Rail employees the implied authority to invite friends to visit the premises or ride in the hostlers.

to ride therein by the employee contrary to the owner's instructions. *The same result has been reached, and the owner employer held not liable, even though the employee had not been expressly instructed not to permit riders in the vehicle, where the employee had no authority, express or implied, to invite others to ride with him.*

*Hall,* 349 F.Supp. at 328 (quoting 8 Am. Jur.2d *Automobiles and Highway Traffic* § 644, p. 202) (emphasis added).[6]

Applying the above legal precepts to the facts of this case, the court concludes that defendant Pacific Rail is entitled to summary judgment with respect to plaintiff's claims. There is simply no evidence on the summary judgment record to indicate that Mr. Vogel had any authority whatsoever to invite his friends onto the business premises during work hours. Furthermore, it is undisputed that Ms. Shannon's visit to the Armourdale facility was not motivated by any attempt to further the business of Pacific Rail. The court therefore concludes that any invitation so extended to Ms. Shannon fell outside the scope of Mr. Vogel's authority, and thus that, at least with respect to Pacific Rail, Ms. Shannon was neither a licensee nor an invitee to whom a duty of reasonable care was owed by defendant. Instead, with respect to Pacific Rail's business premises and hostler truck, Ms. Shannon's entrant status was that of a trespasser to whom no duty was owed by Pacific Rail except to not willfully or wantonly injure her. Because the record is absolutely devoid of any facts suggesting that Ms. Shannon's death resulted from any willful or wanton act, summary judgment in favor of defendant Pacific Rail is appropriate.

The court notes that, in her papers, plaintiff attempts to distinguish the holdings in *Mayhew* and *Hall* from the facts of this case. To that end, plaintiff points out that, whereas the plaintiffs in those cases were inside the defendant employer's vehicle when the accident for which each plaintiff sought damages occurred, because a factual dispute exists in this case as to whether Ms. Shannon was still *on* the hostler, or two steps *away* from the vehicle when she was killed, *Mayhew* and *Hall* do not apply to preclude her recovery against Pacific Rail. Plaintiff fails to refer the court to any authority to support this contention, however. In any event, because the court concludes that Ms. Shannon was a trespasser vis-à-vis defendant Pacific Rail, such that the only duty owed Ms. Shannon was to refrain from willful or wanton conduct, Ms. Shannon's precise position with respect to the hostler at the time of her death is immaterial to the resolution of this case.

Additionally, the court notes that, if by her assertion that Ms. Shannon was no longer on the truck at the time of her death plaintiff seeks to bolster her claim that defendant Vogel's action in moving the truck constituted an end to any deviation from his duties Ms. Shannon's visit may have caused, this argument is likewise unavailing. Indeed, § 242 of the Restatement, quoted *in toto* by the Kansas Supreme Court in *Dye,* specifically states that vicarious liability for injuries sustained by an employee's unauthorized guest will not attach even though "the conduct which immediately causes the harm is within the scope of the servant's employment." *Dye,* 138 Kan. at 813, 28

---

**6.** The court notes that it is unclear from what year's American Jurisprudence 2d this quote was taken, but the subject addressed therein appears in the current edition at 8 Am.Jur.2d *Automobiles and Highway Traffic* § 753 (1997). Although the language used is somewhat different, that section explains

However, the owner of a motor vehicle is not liable, under the doctrine of respondeat superior, for injuries resulting from an employee's negligent operation of the vehicle, to a person invited or permitted to ride therein by the employee contrary to the employer's instructions, *even though the employee had not been expressly instructed not to permit riders in the vehicle,* where the employee had no authority, express or implied, to invite others to do so.

*Id.* (emphasis added).

P.2d at 760 (quoting RESTATEMENT (SECOND) OF AGENCY § 242). Thus, even if Ms. Shannon had stepped away from the truck and Mr. Vogel had returned to his work when he began to move the truck forward, Pacific Rail is not liable for the injuries caused by Mr. Vogel's alleged negligence, even if the allegedly negligent conduct occurred in the scope of his employment.

Finally, the court notes that plaintiff's contention that "Defendant, [sic] did in fact, [sic] owe a duty to Plaintiff, [sic] Jennifer Shannon to prevent her from entering the rail yard premises and its property, the hostler truck," Pl.Mem. in Opp. at 33, is also without merit. Plaintiff appears to have based this mistaken assumption on her belief that, by paying a social visit to Mr. Vogel, Ms. Shannon's status as a licensee with respect to Mr. Vogel is somehow attributable or otherwise transferrable to classify her as a licensee vis-à-vis defendant Pacific Rail. As detailed above, however, because the record is devoid of any facts from which Mr. Vogel's authority to invite Ms. Shannon to his place of work could be inferred, the court concludes that Ms. Shannon was a trespasser with respect to Pacific Rail. Indeed, absent any authority from Pacific Rail to invite Ms. Shannon onto the premises, Ms. Shannon's status as a licensee with respect to Mr. Vogel is not attributable to defendant Pacific Rail. Furthermore, despite plaintiff's assertions to the contrary, and as the *Mayhew* court itself noted, this court is unaware of any "rule which makes it the duty of the company to use physical force to see that no one trespasses on its property or rides upon its vehicles in order to escape liability for an injury to the trespasser." *Mayhew,* 135 Kan. at 189, 10 P.2d at 12.

Thus, for all of the reasons set forth above, the court finds defendant Pacific Rail entitled to summary judgment with respect to plaintiff's claims.

### B. Defendant Vogel's Motion to Reconsider

 Defendant Vogel moves the court to reconsider its order dated August 18, 1999, in which the court granted as unopposed plaintiff's motion for sanctions against defendant Vogel. Although defendant Vogel does not specify the procedural basis for his motion, where a party seeks reconsideration of a non-dispositive ruling, resolution of the motion is governed by D.Kan.Rule 7.3(b). *See Steele v. Ellis,* 961 F.Supp. 1458, 1467 (D.Kan.1997). Pursuant to D.Kan.Rule 7.3(b), "a motion to reconsider shall be based on (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." D.Kan. 7.3(b). Whether to grant or deny a motion to reconsider is committed to the district court's sound discretion. *Phelps v. Hamilton,* 122 F.3d 1309, 1324 (10th Cir.1997).

In this case, the court finds no basis to grant defendant Vogel's motion to reconsider. In his papers, counsel for defendant Vogel takes issue with the court's granting of plaintiff's motion for sanctions as unopposed due to Vogel's failure to respond to the motion. In that regard, counsel for defendant Vogel explains that he duly prepared a response to plaintiff's motion for sanctions and erroneously believed that it had been timely mailed. In fact, no response was mailed or received by the court. Defense counsel does not cite, and the court's research fails to reveal, any authority to support the proposition that an erroneous belief that a response has been timely mailed is sufficient to support a finding of excusable neglect warranting reconsideration of a previous order granting a motion as unopposed. *See City of Chanute v. Williams Natural Gas Co.,* 31 F.3d 1041, 1046 (10th Cir.1994) ("inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect") (citation omitted); *see also Fernandes v. United States,* 169 F.R.D. 372, 374–75 (D.Kan. 1996) (where motion to dismiss granted as unopposed, plaintiff's assertion that failure

to respond caused by clerical error in counsel's office did not justify extension to file response to previously-granted motion to dismiss). Defendant Vogel's motion to reconsider on this basis is, therefore, denied.

Defendant Vogel further argues that sanctions are a remedy only to be imposed in the event that a party engages in dilatory tactics designed to impede the discovery process and submits that no such misconduct has occurred in this case. The court finds this argument likewise insufficient to warrant reconsideration of its previous order, however. There is simply nothing in defendant's motion to indicate that the sanctions imposed by the court's August 18, 1999 order were unduly harsh or otherwise manifestly unjust. Accordingly, the court denies defendant Vogel's motion to reconsider.[7]

IT IS THEREFORE ORDERED BY THE COURT THAT defendant Pacific Rail's motion for summary judgment (doc. 75) is granted. Plaintiff's claims with respect to defendant Pacific Rail are dismissed in their entirety.

IT IS FURTHER ORDERED BY THE COURT THAT defendant Vogel's motion for reconsideration (doc. 94) is denied.

---

7. The court notes that, in her response to defendant Vogel's motion to reconsider, plaintiff requests the court to impose additional monetary sanctions in the amount of $193.31. While the court denies defendant Vogel's motion to reconsider its previous order imposing sanctions, it does not believe that any further sanctions are warranted under the facts and circumstances of this case. Plaintiff's request for additional monetary sanctions in the amount of $193.31 is, therefore, denied.